**Docket No. 2015-153**

---

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

---

*In re* CARBONITE, INC.

*Petitioner.*

---

ON PETITION FOR WRIT OF MANDAMUS TO THE
UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS
IN CASE NO. 4:10-cv-00435-ALM
JUDGE AMOS L. MAZZANT

---

## NON-CONFIDENTIAL RESPONSE TO PETITION FOR A WRIT OF MANDAMUS

---

JONAS R. MCDAVIT
ALAN S. KELLMAN
TAMIR PACKIN
DESMARAIS LLP
230 Park Avenue
New York, NY  10169
(212) 351-3400

*Attorneys for Respondent*

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................... i

TABLE OF AUTHORITIES ................................................................. ii

CERTIFICATE OF INTEREST ............................................................. v

INTRODUCTION ................................................................................ 1

ISSUES PRESENTED ......................................................................... 2

STATEMENT OF FACTS .................................................................... 3

   I.    Carbonite Offers Free Service............................................... 4

   II.   Carbonite's Conduct During Discovery And The District Court's Sanction.......................................................................... 6

STANDARD OF REVIEW ................................................................. 10

SUMMARY OF ARGUMENT ........................................................... 11

ARGUMENT .................................................................................... 13

   I.    Carbonite Has Other Means Of Obtaining Relief....................... 13

   II.   Carbonite's Right To The Writ Is Not "Clear And Indisputable." ............ 16

       A.   There Is No Requirement That The District Court Document Its Factual Findings For Each Document Separately. ..................................................................... 17

       B.   The District Court Correctly Applied The Crime-Fraud Exception To the Attorney-Client Privilege. .................................. 20

   III.  Carbonite Has Not Demonstrated That This Court Should Issue A Writ Of Mandamus Vacating the District Court's Sanctions Order .......... 27

CONCLUSION ................................................................................. 29

CERTIFICATE OF SERVICE ............................................................. 31

# TABLE OF AUTHORITIES

## Cases

*Allied Chem. Corp. v. Daiflon, Inc.*,
   449 U.S. 33 (1980) ............................................................... 11, 16, 27

*Batson v. Neal Spelce Assoc., Inc.*,
   765 F.2d 511 (5th Cir. 1985) ................................................28

*Card Tech. Corp. v. DataCard Inc.*,
   249 F.R.D. 567 (D. Minn. 2008) ...........................................29

*Coastal Sales Marketing, Inc. v. Hunt*,
   694 F.2d 1358 (5th Cir. 1983) ..............................................26

*Ethicon, Inc. v. U.S. Surgical Corp.*,
   135 F.3d 1456 (Fed. Cir. 1998) ............................................24

*Feld Entm't Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*,
   873 F. Supp. 2d 288 (D.D.C. 2012) ......................................27

*Feminist Women's Health Center v. Mohammad*,
   586 F.2d 530 (5th Cir. 1978) ................................................26

*In re AIM Sports, Inc.*,
   447 F. App'x 213 (Fed. Cir. 2011) ........................................29

*In re Am. Cynamid Co.*,
   7 F. App'x 930 (Fed. Cir. 2001) ...........................................18

*In re Grand Jury Proceedings in Matter of Fine*,
   641 F.2d 199 (5th Cir. 1981) ................................................22

*In re Grand Jury Subpoena*,
   831 F.2d 225 (11th Cir. 1987) ........................................ 17, 19

*In re Int'l Sys. & Controls Corp. Sec. Litig.*,
   693 F.2d 1235 (5th Cir. 1982) ..............................................22

*In re Lawson Software*,
   494 F. App'x at 57 ...............................................................11

*In re Occidental Petroleum Corp.*,
   217 F.3d 293 (5th Cir. 2000) ................................................21

*In re Omnicom Group, Inc. Sec. Litig.*,
   233 F.R.D. 400 (SDNY 2006) ..............................................22

*In re Richard Roe, Inc.*,
   68 F.3d 38 (2d Cir. 1995) .....................................................18

*In re Santa Fe Int'l Corp.*,
  272 F.3d 705 (5th Cir. 2001) ...........................................................21

*In re Sealed Case*,
  676 F.2d 793 (D.C. Cir. 1982) .........................................................22

*In re Shelbyzme LLC*,
  547 F. App'x 1001 (Fed. Cir. 2013) .................................................11

*In re Spalding Sports Worldwide, Inc.*,
  203 F.3d 800 (Fed. Cir. 2000) .........................................................16

*In re Volkswagen of Am., Inc.*,
  566 F.3d 1349 (Fed. Cir. 2009) .......................................................11

*Mallard v. United States Dist. Court for S. Dist. of Iowa*,
  490 U.S. 296 (1989)...........................................................................11

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009)...........................................................................11

*Nat'l Hockey League v. Metro. Hockey Club*,
  427 U.S. 639 (1977)...........................................................................28

*Pumpkin Air, Inc. v. City of Addison*,
  608 F. Supp. 787 (N.D. Tex. 1985) .................................................26

*Roadway Exp., Inc. v. Piper*,
  447 U.S. 752 (1980)...........................................................................28

*Shuttlesworth v. Hous. Opportunities Made Equal*,
  873 F. Supp. 1069 (S.D. Ohio 1994) ...............................................23

*United States v. Blaszak*,
  349 F.3d 881 (6th Cir. 2003) ...........................................................23

*United States v. Dern*,
  289 U.S. 352 (1933)...........................................................................11

*United States v. Goldberg*,
  906 F. Supp. 58 (D. Mass. 1995) .....................................................26

*United States v. Harrison*,
  No. 13-cv-3320, 2015 WL 2126919 (E.D. Pa. May 7, 2015) ..........23

*United States v. Lawless*,
  709 F.2d 485 (7th. Cir. 1983) ..........................................................19

*United States v. Marcano–Garcia*,
  622 F.2d 12 (1st Cir.1980)................................................................27

*United States v. Wagner*,
  No. 3:94-cv-2540, 1996 WL 148356 (N.D. Tex. Jan. 29, 1996) ......26

*United States v. Weiss*,
   630 F.3d 1263 (10th Cir. 2010) ..........................................................................23

*Welch v. United States*,
   750 F.2d 1101 (1st Cir.1985)..............................................................................27

*Whelan v. Abell*,
   48 F.3d 1247 (D.C. Cir.1995)..............................................................................27

**Statutes**

18 U.S.C. §1512(b)(1)..............................................................................................23

18 U.S.C. §201(c)(2)................................................................................................23

**Rules**

Fed. R. Civ. P. 26(b)(5)(A) .....................................................................................19

<u>CONFIDENTIAL MATERIAL OMITTED</u>

Oasis has omitted confidential material from pages 3-6 and 24 of this Response to

Carbonite's Petition For A Writ of Mandamus.  That information relates to

material described by Carbonite at page vi of its petition and sealed pursuant to

protective order in the underlying litigation.

# CERTIFICATE OF INTEREST

Counsel for the respondent Oasis Research, LLC certifies the following:

1.      The full name of every party or amicus represented by me is Oasis Research, LLC.

2.      The name of the real party in interest represented by me is NOT APPLICABLE.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are NONE.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

> John M. Desmarais, Alan S. Kellman, Jonas R. McDavit, Tamir Packin, Lindsey E. Miller, Tom BenGera, Justin P. Wilcox, Dustin Guzior, John C. Spaccarotella, Lauren M. Nowierski, Laurie Stempler, Tal Kedem, Dmitry Kheyfits (Terminated), Xiao Li (Terminated), Eugene Chiu (Terminated), of Desmarais LLP; James C. Tidwell of Wolfe, Tidwell & McCoy, LLP.

Dated:  September 22, 2015                    Respectfully submitted,


                                             */s/ Jonas R. McDavit*
                                             _____
                                             Jonas R. McDavit
                                             *Attorney for Respondent*
                                             *Oasis Research, LLC*

# INTRODUCTION

Like EMC,[1] Carbonite asks this Court grant the extraordinary remedy of a writ of mandamus to overturn a discovery order in which the district court applied well-established Fifth Circuit law to the complex facts of this case. And like EMC, Carbonite asserts many of the arguments that it recently made in summary judgment at the district court—but not in response to Oasis' motion to compel—to justify the extraordinary remedy of a writ of mandamus. This Court should not entertain Carbonite's invitation to use mandamus to weigh in on Carbonite's newly-minted arguments or pending summary judgment motion.

Moreover, as explained in detail in response to EMC's related petition, mandamus is inappropriate under the facts of this case because Carbonite may adequately remedy the district court's purportedly erroneous findings by seeking direct appeal of the district court's order after final judgment. The Court need not—and should not—reach Carbonite's substantive disagreement with the district court's order for that additional reason. But should this Court find that the facts of this case warrant a mandamus review—and they do not—this Court should affirm the district court's correct legal articulation of the crime-fraud exception and defer to the district court's factual findings regarding *prima facie* evidence of a crime or fraud. This Court should not engage in a second *in camera* review to determine whether each of the ordered documents is reasonably related to the crime or fraud,

---

[1] To avoid duplicative filings, Oasis hereby incorporates its answering brief to EMC Corporations and Decho Corporations Petition for a writ of mandamus, filed on September 22, 2015 in Case No. 15-151, D.I. No. 28 (hereinafter, "Oasis Br.")

because with only the cold mandamus record before it, this Court is not well-positioned to make that determination.

Carbonite's request for the extraordinary remedy of a writ of mandamus to vacate the district court's sanctions order granting Oasis an adverse inference jury instruction is likewise improper.  First, Carbonite can seek review of the district court's sanctions order after final appeal on the merits.  Carbonite does not even assert that it cannot—let alone demonstrate that it cannot—obtain adequate relief by means other than a writ of mandamus.   Even if this Court were to consider the proprietary of the district court's sanctions order, the order was appropriate—and surely does not rise to the level of error required for mandamus correction—given the district court's observations regarding Carbonite's litigation conduct and delay tactics, which are inconsistent with the arguments Carbonite makes to this Court.

Accordingly, Oasis respectfully requests that this Court deny Carbonite's Petition for mandamus regarding the document production and the sanctions order.

## ISSUES PRESENTED

1.  Should this Court use the extraordinary remedy of a writ of mandamus to conduct an interlocutory review of two district court discovery-related orders—a document production order and a sanctions order—each of which can be adequately addressed on direct appeal after final judgment on the merits?

2.  Should this Court use the extraordinary remedy of granting a writ of mandamus to overturn the district court's document production order even though the district court reached its conclusion after it conducted an *in camera* review of hundreds of documents (the propriety of which Carbonite does not challenge on

appeal) applying well-established Fifth Circuit precedent regarding the crime-fraud exception to the attorney-client privilege to the facts of this case, with which the district court is intimately familiar?

3.   Should this Court use the extraordinary remedy of granting writ of mandamus to overturn the district court's document production order because it does not include individualized document-by-document findings when Carbonite did not make any document-by-document claims of privilege and never requested document-by-document findings from the district court?

4.   Did the district court clearly and indisputably err in issuing its sanctions order after it found that Carbonite unambiguously violated the district court's order as part of its litigation strategy and where Carbonite did not even seek relief from this Court until it was in violation of the district court's order for over a week?

## STATEMENT OF FACTS

For the purposes of avoiding duplicative filings, Oasis incorporates the facts stated in its Answering Brief to EMC's Petition for Writ of Mandamus in No. 15-151, D.I. No. 28.  In addition, the following facts are relevant to this Petition.

Carbonite authorized ██████████████████████████████ ██████████████████████████████ A3395; A3419. ██████████████ ██████████████████████████ EMC offered the alleged co-inventors $75,000.  A765 at 837:13-838:13; A2393; A3296-97; A3308; A3205; A3231-32; A3237.

In addition, Counsel for EMC represented to Campos and Atwood that ██████████████████████████████████████████████. A764 at

832:16-833:9; A3296-97; A3308; A3205; A3231-32; 3237; *see also, e.g.*, A6623-32; A6662-66; A3416-19; A6668-87.  Carbonite has admitted that it, together with the other defendants and through counsel for EMC, interviewed Campos and Atwood before their depositions.  A2393-94; A764 at 832:25-834:13.

Carbonite was a party to the August 30, 2012 Agreement with the alleged co-inventors, A541-554, and, ████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████ A3227; A3307; A6634-52; A3567; A3410; A1637-41; A1643.[2]

## I.    Carbonite Offers Free Service.

Immediately following the trial, Carbonite's General Counsel, ████████

███████████████████████████████  ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████  A4461-64.  ███████████████████

████████████████████████  A4464.  ████████████

████████████████████████████████████████

---

[2] Carbonite misleadingly asserts that ████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████  But that testimony is not surprising because Oasis's corporate witness was not designated as its 30(b)(6) witness regarding Carbonite's actions that constitute RICO violations and predicate acts; Oasis' 30(b)(6) witness was designated on other topics—not the topic of Carbonite's actions. A6600-19.

**CONFIDENTIAL MATERIAL REDACTED**



████████████████████████████████████████████████

█████████████████████████ A4360-61; A4390; A3219.  At that time, Oasis'

patent-infringement claims and RICO claims were still pending.  In fact, ████

██████████████████████ before Oasis had filed its opposition to Defendants'

motions for summary judgment, and also before Oasis filed its motion for a

judgment as a matter of law under Federal Rule of Civil Procedure 50(a) and

alternative request for a new trial pursuant to Federal Rule of Civil Procedure

59(a).  *See* A6692-756.[3]  The alleged co-inventors' counsel noted █████████

████████████████████████████████████████████████

████████████████████████████████████████████████

A6688-89.[4]

████████████████████████████████████████████

█████████████████████████ A4418; A3219-20.  In the district court,

Carbonite argued ██████████████████████████████████████

████████████████████████████████████████ A6503.  Indeed, in 2015,

████████████████████████████████████████████████

████████████████████████████ A3219-20; Pet. at 9, n.6. ██████████████

████████████████████████████████████████████████

---

[3] Carbonite asserts ████████████████████████████████████████
Pet. at 9.  However, Carbonite has since subpoenaed the alleged co-inventors for
deposition testimony.  At the deposition, Carbonite insisted that it be permitted to
even split the seven-hour deposition time with Oasis.  *See, e.g.,* A2202-03.

[4] A6688-89 is one of the documents that the district court had previously reviewed
*in camera* and ordered the alleged co-inventors to produce.  A52-53; A1693-94.

████████████████████████████████████████  A3221.  ████

████████████████████████████████████████████████████

A3425.[5]

## II.  Carbonite's Conduct During Discovery And The District Court's Sanction.

Following the district court's entry of a scheduling order in this case in April 2015, Carbonite did not produce any documents relating to Oasis' RICO claims. On May 22, 2015 Oasis wrote Defendants requesting the production of documents relating to Defendants' co-inventorship claims and the payments made or offered in connection with Oasis' RICO allegations.  A95-96.  Oasis' requests were tailored to communications that it believed were reasonably related to the furthering of the crime or fraud, and thus were discoverable under the crime-fraud exception to the attorney-client privilege.  *Id*.  Oasis diligently pursued its requested documents.  After several telephone discussions with counsel for Carbonite that week, during which Carbonite requested additional time to come up to speed, counsel set up a meet and confer on June 8, 2015, to discuss their disputes regarding Carbonite's privilege objections.  A6595-96.  During the call, counsel for Carbonite again requested more time to get up to speed on the issue, indicated that it was collecting documents, and stated that it would be providing a privilege log.  Counsel for Oasis followed up by telephone on June 12, 2015. A6597.  On Monday, June 15, 2015, counsel for Carbonite sent an email stating

---

[5] ████████████████████████████████████████████████

████████████████████████████████████

████  A6561; A6563-68; A1856; A778.

that it did not have any additional information for Oasis.  *Id.*  Counsel for Oasis had a follow-up discussion with counsel for Carbonite on Wednesday, June 17, 2015, during which counsel for Carbonite indicated that Carbonite would not provide a privilege log regarding the withheld documents.  The parties called the district court to request a discovery conference regarding Oasis' requests for documents.  A6598.  The parties had a telephonic discovery hearing with the district court on June 18, 2015.  During that hearing Carbonite sought to further delay resolution regarding document production arguing that the issue is "a little premature at this point and a little hypothetical simply because the parties have not -- we've just started the additional document production that Plaintiff had recently asked for."  A1456.  Carbonite further sought an extended briefing schedule:  "we would simply suggest that the briefing schedule reflect a schedule in which the parties have the ability to more crystalize the issue before bringing really a hypothetical issue to this Court. . . ."  A1457.  Despite Carbonite's plea, the district court also ordered an expedited briefing schedule regarding Oasis' motion to compel document production.  A6757.  During that call, in response to Defendants' requests, the Court also set the trial date for the RICO trial to October 26, 2015.  A1468; A1474-76; A1478.

On June 23, 2015, Oasis filed a Motion to Compel Defendants to Produce Documents Related to Alleged Co-Inventors Under the Crime-Fraud Exception to the Attorney-Client Privilege and to Compel Production of Defendants' Joint Defense Agreement.  A1484-503.  On June 30, 2015, Defendants filed their responses.  A1801-23; A1857-77.  On July 2, 2015, Oasis filed its reply.  A1943-

51.  On July 6, 2015, Defendants filed their sur-replies.  A2033-50.  On July 13, 2015, Carbonite's co-defendant, EMC, filed supplemental briefing on the issue.  A2098-104.  On July 17, 2015, Oasis filed its response to EMC's supplemental briefing.  A2132-37.

On July 22, 2015, the district court granted-in-part and denied-in-part Oasis' Motion to Compel and required Defendants to produce documents related to the RICO allegations for *in camera* inspection no later than July 28, 2015.  A72-76.  Despite the upcoming trial, co-defendants EMC and Carbonite sought to further delay resolution of the matter by requesting additional time for *in camera* submission to the district court.  Oasis Br. at 16-17.  Carbonite never indicated to the district court that it would not comply with the court's conclusions after *in camera* review, or that the district court should take into consideration the time required for potential appellate review before trial.

When Carbonite submitted documents *in camera* on August 12, 2015, it did not provide Oasis with any record of the documents provided to the district court or documents that it withheld from the district court.  Oasis requested a privilege log from Carbonite, A6415-16, but Carbonite refused to provide one.  A6419.  On August 20, 2015, Oasis sent a letter to the district court regarding Defendants' *in camera* submission requesting that the district court order Defendants' to provide a privilege log to (or at least an index of) withheld documents so that Oasis could assess their *in camera* submissions.  A6420-24.  Carbonite responded via letter to the Court on August 24, 2015, indicating that it did not believe the provision of a privilege log was necessary or appropriate.  A6622.

8

On August 28, 2015, the district court ordered Carbonite to produce a subset of the documents that it reviewed *in camera* to Oasis.  A79-81.  The district court gave Carbonite a week to comply with its order even though Carbonite already had the documents ready for production as a result of its submission.  *Id.*  Carbonite waited until the compliance date, September 4, 2015, to seek relief from the district court's order.  A3089-102.  In its motion, Carbonite argued to the district court that the denial of an immediate stay would force it to (1) face contempt of the production order, or (2) produce the documents and thereby forfeit its appellate rights.  A102 at n.5 (quoting A3096).  The district court denied Carbonite and EMC's twin motions to stay on September 11, 2015.  A93-104.  In doing so the district court made the following finding based on Defendants' conduct to that point:

> Additionally, it is the Court's opinion that deciding whether or not to comply with the Court's Order is part of Defendants' litigation strategy.  The Court believes that Defendants knew whether or not they were going to comply with the Court's Order well-before they informed the Court of their intention on September 3, 2015, and filed their motions to stay on September 4, 2015, which was the production deadline. Therefore, the Court is not persuaded by Carbonite's argument that it is in some way forcing Defendants to face contempt by not granting their motions to stay.

A102 at n.5.

The following week on September 8, 2015, in a discovery conference with the district court regarding an unrelated issue, before Defendants made any filings with this Court, the district court further explained to Defendants that they already had been in violation of the district court's production order for a week:

9

> The Court's view is, no, you're in violation of the Court's order. I'm not going to grant any kind of stay. We're proceeding. This case is set for trial at the end of October. You're welcome to seek whatever relief, but *when you didn't produce the documents and you didn't get a stay from the Court, which I never granted even a temporary stay, it was in violation of the order* and the Court will consider whatever sanction is appropriate at the appropriate time.

A3132 (emphasis added).  On September 15, 2015, given Carbonite's continued, unexcused violation of the district court's production order, and Carbonite's strategic decision to delay resolution regarding document production to the eve of trial so that it could seek to use an appeal as a mechanism for disturbing the October 26, 2015 trial, the district court entered a reasonable sanctions order. A105-06.  At that point in time Carbonite had been in violation of the district court's order for eleven days.  In its sanctions order, the district court explained that it would give the following instruction to the jury at trial:

> 1. The Court will inform the jury that it ordered Defendants to produce documents that it found relevant to Oasis' RICO claims, and Defendants violated the Court's Orders by refusing to produce those documents; and
> 2. Based upon Defendants' conduct, the jury may infer that those documents supported Oasis' claims and were damaging to Defendants' case.

*Id*.

## STANDARD OF REVIEW

"The writ of mandamus is available in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power."  *In re Volkswagen of*

*Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).  A party seeking a writ bears the burden of proving that it has no other means of obtaining the relief desired, *Mallard v. United States Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 309 (1989), and that the right of issuance of the writ is "'clear and indisputable,'" *Volkswagen*, 566 F.3d at 1351 (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980)).  "A suggestion that the district court abused its discretion, which might warrant reversal on a direct appeal, is not a sufficient showing to justify mandamus relief." *Volkswagen,* 566 F.3d at 1351. The equities lie considerably against granting mandamus. *See United States v*. *Dern,* 289 U.S. 352, 359 (1933).

In declining to address questions of attorney-client privilege on mandamus, this Court has specifically held that "issues of attorney-client privilege can generally be reviewed effectively on appeal from final judgment." *In re Lawson Software*, 494 F. App'x at 57 (citing *Mohawk Indus., Inc. v. Carpenter,* 558 U.S. 100, 109 (2009)).  This Court has recognized that even in cases involving the crime-fraud exception to the attorney-client privilege, the parties ordered to produce documents have "alternative avenues to obtain meaningful review of [their] arguments after trial." *In re Shelbyzme LLC*, 547 F. App'x 1001, 1002 (Fed. Cir. 2013) (citing *Mohawk Indus.*, 558 U.S. at 109) (denying mandamus where Petitioner attacked the district court's findings regarding a *prima facie* case as it relates to the crime-fraud exception).

## SUMMARY OF ARGUMENT

As with fellow petitioner, EMC, Carbonite offers no justification for addressing a routine discovery order through the extraordinary remedy of a writ of

mandamus. Moreover, Carbonite's additional arguments that mandamus is required to protect trial strategy and third-party interests are similarly without merit. Carbonite identifies no document that will reveal its trial strategy, nor could it, as the time period of the documents at issue predate RICO counsel's involvement in this case. And no third party has come forward to complain about the district court's production order despite the fact that all relevant third parties are well aware of the order.

And Carbonite's right to the writ on the merits is not "clear and indisputable," again for the same reasons as explained in response to EMC's Petition. Carbonite offers no competent authority to support its suggestion that the district court must articulate specific factual findings for each document, especially when Carbonite did not ask for such a finding and never provided a privilege log to support its privilege claims. And Carbonite's further laundry list of excuses for its behavior cannot save it from the district court's finding of a *prima facie* case of crime/fraud under Fifth Circuit authority.

Finally, Carbonite has only itself to blame for the district court's adverse inference jury instruction, as Carbonite and fellow defendant, EMC engaged in repeated attempts to delay resolution of this matter. Indeed, the district court's order is quite lenient under the circumstances and actually helps Carbonite, as it provides a vehicle for Carbonite to appeal the district court's finding after final judgment without the need for Carbonite to produce the ordered documents.

# ARGUMENT

## I.  Carbonite Has Other Means Of Obtaining Relief.

For the same reasons explained in response to EMC's Petition, this Court's review on mandamus is not necessary or appropriate because Carbonite can adequately challenge the district court's production order on direct appeal after final judgment on the merits.  Oasis Br. at 22-24.  For that reason alone, this Court should deny the Petition.

Carbonite's additional arguments to support its position do not satisfy its burden of showing that a writ of mandamus is appropriate in this case.  For example, Carbonite asserts that production of the documents will inform Oasis as to Carbonite's "preparation and trial strategy, and they may even color the ultimate testimony of the witnesses who review them."  Pet. at 26.  But Carbonite provides no support for its conclusory assertion, which is not—and cannot be—true.  In fact, during the July 24, 2015 telephone conference with the district court, the district court specifically put temporal limitations on its *in camera* review.  A2282 at 17:6-15.  Accordingly, it is not possible that the withheld documents include any trial strategies of Carbonite's current RICO trial counsel.  Although Carbonite's petition shows Carbonite's willingness to use the withheld documents—for which Oasis has not even been given a privilege log—to support its argument for mandamus (*see, e.g.*, Pet. at 17 (referring to "PRIV" documents), Carbonite has not identified a single document that reveals any purported trial strategy.  In addition, Carbonite does not explain how its production can color the testimony of any witnesses, other than the Carbonite witnesses who already have seen the documents.  Carbonite can

prevent Oasis witnesses from viewing the documents by designating them confidential pursuant the district court's protective order in the case. *See* A6028-53. As such, Carbonite's additional justification does not merit the extraordinary remedy of mandamus.

Carbonite also suggests that a writ of mandamus is appropriate to protect third-party interests based on its assertion that the district court's order destroys the privilege of other former defendants. Pet. at 26-27. But Carbonite is incorrect in its assertion, because the documents that the district court ordered produced are Carbonite documents involving Carbonite's ongoing crime and fraud. And any potential third-party interests cannot possibly justify the extraordinary remedy of a writ of mandamus. Pursuant to its joint defense agreement with its former co-defendants, Carbonite was obligated to (and presumably did) notify its former co-defendants of Oasis' document requests and the district court's production order.[6] *See* Pet. Ex. 4 at § 11. The purpose of such a disclosure was to give any such parties an opportunity to assert their interests in opposing the production. *Id.* Those parties' purported interests cannot possibly justify mandamus given that they were notified of the issue for the purposes of asserting their potential interests, yet none of them made any objection to Oasis' requests or the district court's

---

[6] The joint defense agreement states: "In the event a Party receives an order, subpoena, request, or demand for disclosure of Shared Information from any court or governmental agency, or from a party to any litigation or administrative proceeding (a 'Disclosure Demand'), that Party shall as soon as reasonably possible notify the other Parties of such Disclosure Demand. The purpose of such notice is to provide all other Parties with the opportunity to assert their interests in opposing such Disclosure Demand." A6670-71.

production order.   Accordingly, this Court should reject Carbonite's additional justification.

Finally, Carbonite argues that "[t]here is a serious risk that the attorney-client privilege, and litigants' rights to plead valid defenses, will be eroded in the months or years until a final appeal can be heard in this case." Pet. at 17.  Such breathless hyperbole is unsupported by the record.  The district court's order was highly factual in nature, and the district court's order holding that certain documents are subject to the crime-fraud exception to the attorney-client privilege is extremely unlikely to impact other cases.   In fact, during a recent discovery conference the district court noted the differences between the situation of the alleged co-inventors, and the more typical purchase of patent rights from a named inventor, such as Mr. Crawford:

> Ms. Boland, I don't agree with your position that we're comparing the same kind of issues. What we have with Mr. Crawford is he's the sole inventor of the patents at issue here and he wasn't selling himself to the highest bidder.  He didn't say anything that he was accepting money for his testimony. So he's not in the same position of the people who have asserted themselves as co-inventors, and they're not co-inventors. So their activity and the conduct that they went through and whether the jury ultimately believes that they were paid for their testimony and that the whole assignment agreement was all a sham, that's a fact question for the jury and credibility the jury will have to decide.

A3129-30.   Carbonite's argument that litigants will be deterred from pursuing valid defenses or that the attorney-client privilege will be eroded is wrong.

15

In sum, this Court should decline to enter a writ of mandamus because Carbonite cannot demonstrate that a writ of mandamus is the proper vehicle for addressing Carbonite's concerns.

## II. Carbonite's Right To The Writ Is Not "Clear And Indisputable."

"The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chem.*, 449 U.S. at 34. Carbonite cites no authority which justifies intervention in the district court's fact-intensive discovery order. Nor is there legal support for Carbonite's novel proposition that a district court issue an individual document-by-document order after conducting a massive *in camera* review.[7] And, in any event, the district court correctly applied Fifth Circuit law in evaluating Carbonite's privilege claims in view of the substantial evidence of Carbonite's RICO violations. In sum, Carbonite has not demonstrated its right to a writ is "clear and indisputable". *Id*. at 35.

---

[7] *In re Spalding Sports Worldwide, Inc.* (203 F.3d 800 (Fed. Cir. 2000)) does not support granting Carbonite's mandamus petition. In a decision of first impression, and decided under Federal Circuit, not Fifth Circuit, law, that court granted mandamus of a district court production order of an internal invention record because the only evidence on the record to support a showing of inequitable conduct—***not fraud***—was a "mere allegation of [respondent's] failure to cite a reference to the [Patent Office]." *Id*. at 807-8. The Court also clarified that although this was not sufficient evidence to overcome the attorney-client privilege, "a party seeking to overcome the attorney-client privilege need not conclusively prove fraud, or necessarily submit direct evidence to make a prima facie showing of fraud." *Id*. at 808.

## A. There Is No Requirement That The District Court Document Its Factual Findings For Each Document Separately.

Carbonite suggests that the district court must articulate specific factual findings for each document under the crime fraud exception. Pet. at 15. But that is not the law. Rather, the documents at issue must bear "a reasonable relation to the furtherance of ongoing or future crime." *In re Grand Jury Subpoena*, 561 F.3d 408, 412 (5th Cir. 2009). For example, in *In re Grand Jury Subpoena*, the appellants argued that the district court's in-camera review and resulting order to produce were improper because it "failed to conduct a document-by-document analysis of the relationship between the privileged documents and the alleged crime or fraud." *Id*. at 412. The Fifth Circuit affirmed the district court's production order and held that "the appellants fail[ed] to demonstrate that the district court did not carefully review each document" and that the "crime fraud exception was met as to each document." *Id*. Similarly here, based on the evidence before it, the district court found a *prima facie* case of bribery, witness tampering and racketeering. The district court then reviewed Carbonite's purportedly privileged documents to determine whether any of those documents reasonably related to the furthering of a continuing crime or fraud.

Carbonite's suggestion that the district court did not appropriately review those documents is inconsistent with the district court's actions. First, the district judge told Carbonite (and EMC) that, despite his busy schedule, he would individually review each submitted document. A2288 at 23:18-22. Second, rather than ordering the entirety of the documents requested by Oasis to be produced, the

district court ordered Carbonite to produce fewer than fifty-percent of the Carbonite's documents from the already-narrowed subset of documents the district court reviewed *in camera*. A102 at n.6.[8] The district court's statements and orders demonstrate that it reviewed all of the documents and made an individualized determination for each document.[9]

Carbonite scolds the district court for not explaining whether a document was not privileged *ab initio* and which protection it determined to apply to each document. Pet. at 15. But the lack of a record on that point is of Carbonite's own making. Carbonite repeatedly refused to provide a privilege log to Oasis and never made any effort to meet its burden in justifying its withholding of purportedly privileged documents from production in the first place. Indeed, Carbonite made

---

[8] Indeed, Carbonite represented to the district court that it had "thousands and thousands" of withheld documents that fell under Oasis' request because they related to the alleged co-inventors. A2285 ("When we run just those names through our database, we run -- we get thousands and thousands of references to them, most of which have really nothing to do with any of the allegations that they've made, that the Plaintiff made in this case. Of course there would be a lot of references, so, I mean, we too -- it would be a very high volume.").

[9] Neither *In re American Cynamid Co.* nor *United States v. Richard Roe, Inc.* compel a district court to "make specific factual findings that each document satisfies the crime-fraud exception." Pet. at 15. *Cynamid* vacated a district court order compelling production of two documents because they "were based solely on their relevance to the issue of punitive damages" and not in furtherance of an alleged fraud. 7 F. App'x 930, 930 (Fed. Cir. 2001). The *Cynamid* court did not state that a document-by-document review was required or even necessary, only that the documents must be "in furtherance of the alleged fraud" as is the case here. *Id.* The *Roe* court remanded a district court production order because the district court applied the incorrect legal standard in evaluating the documents at issue, not because it did not conduct a document-by-document review. *In re Richard Roe, Inc.*, 68 F.3d 38, 41 (2d Cir. 1995).

no effort to satisfy its burden under Federal Rule of Civil Procedure 26(b)(5)(A) (through a privilege log or otherwise), which requires:

> (A) Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).  Having failed to meet that requirement, Carbonite would impose an additional burden — that it itself refuses to undertake — on the district court (and this Court) to articulate why each document should be produced. To the extent any such detailed articulation on a document-by-document basis is required by district court, at minimum it also would be required of Carbonite to explain why the privilege applies in the first instance.  *E.g.*, *In re Grand Jury Subpoena*, 831 F.2d 225, 228 (11th Cir. 1987) ("Specifically, the district court must require [the party asserting privilege] to assert the privilege with a document-by-document explanation as to why the privilege shields the document from the subpoena's reach."); *United States v. Lawless*, 709 F.2d 485, 487 (7th. Cir. 1983) ("The claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable.").

Moreover, at no time did Carbonite request that the district court issue an order that explains its bases on a document-by-document basis.  That strategic

decision likely had two motives. First, Carbonite did not want the district court to provide Oasis with any information in the documents, as it has successfully avoided to date. Second, Carbonite apparently knew that it intended to challenge the district court's order based on a lack of detail—as it does now—and did not want the district court to provide its detailed document-by-document findings because Carbonite thought that would weaken its chances of success on appeal. Having never asked the district court for a written document-by-document explanation, Carbonite should not be permitted to challenge the district court's order because it does not contain a document-by-document basis. Surely, absent any such request to the district court, such relief is inappropriate on mandamus. In fact, even if this Court were to find that the district court must provide a written document-by-document analysis, the appropriate remedy would be to require the district court to do so rather than to issue a writ of mandamus vacating the district court's production order. [10]

## B. The District Court Correctly Applied The Crime-Fraud Exception To the Attorney-Client Privilege.

As Oasis detailed in response to EMC's petition, the district court correctly articulated the standard for the crime-fraud exception and correctly applied the law respect to that exception. Oasis Br. 15-16. The district court did not improperly

---

[10]   The fact that the district court did not order production of nearly duplicative documents—as Carbonite asserts, but Oasis cannot evaluate because it has not been provided with the documents—does not show clear error. Instead, it merely demonstrates that the district court did not find production of duplicative or nearly duplicative documents, necessary.

shift any burdens. Instead, as discussed above, it is Carbonite that seeks to improperly shift the burden of demonstrating the applicability of the attorney client privilege from itself to the district court. *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) ("A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability.") (citations omitted).

### 1. The District Court Did Not Err In Finding A *Prima Facie* Case Against Carbonite.

Carbonite's assertion that the "district court clearly erred in implicitly finding a *prima facie* case against Carbonite" is misplaced. *See* Pet. at heading II.B.2. First, the district court did not err as there is substantial evidence of Carbonite's malfeasance. *See supra* at 3-10, Oasis Br. At 3-20. Second, even if the "district court made clearly erroneous findings," that is insufficient for the extraordinary remedy of a writ of mandamus which requires that petitioner establish "not only that the district court erred, but that it clearly and indisputably erred." *See In re Santa Fe Int'l Corp.*, 272 F.3d at 714 (quoting *In re Occidental Petroleum Corp.*, 217 F.3d 293, 295 (5th Cir. 2000)). In addition, Carbonite levels several arguments that it did not make at the district court and raises for the first time on appeal. This Court should decline to address those new arguments for the first time on mandamus. *E.g.*, *Apollo v. Peake*, 306 F. App'x 584, 587 (Fed. Cir. 2009). But even if the Court were to entertain those assertions, Carbonite falls well short of justifying mandamus relief.

First, Carbonite argues that there is no evidence that it intended to commit acts of bribery or witness tampering, citing *In re Int'l Sys. & Controls Corp. Sec.*

*Litig.*, 693 F.2d 1235, 1243 (5th Cir. 1982).  Pet. at 19.  Carbonite's argument is wrong for two reasons.  As an initial matter, *In re Int'l Systems* addressed a different factual situation, where defendants argued that counsel had been engaged to investigate ***prior acts*** (as opposed to ongoing acts) of bribery.  *Id.* at 1243.  The Fifth Circuit contrasted that situation with the circumstances in *In re Sealed Case*, 676 F.2d 793, 815-16 (D.C. Cir. 1982) where counsel was actively engaged before and during the fraudulent activity.  *Id.*[11]  Regardless, the substantial factual record—particularly when Carbonite's evidence and excuses are disregarded—shows that Carbonite was actively engaged in procuring witness testimony through inducements.  *See In re Int'l Sys.*, 693 F.2d at 1242 (holding that a prima facie case is established when the evidence "will support [a] finding if evidence to the contrary is disregarded") (quoting Black's Law Dictionary 4th ed. 1968).

---

[11] Similarly, *In re Grand Jury Proceedings in Matter of Fine*, 641 F.2d 199 (5th Cir. 1981) and *In re Omnicom Group, Inc. Sec. Litig.*, 233 F.R.D. 400, 409-10 (SDNY 2006) are inapposite.  *Fine* concerned a district court order compelling a third party's attorney to identify his client in a criminal case.  641 F.2d at 201.  The *Fine* court ***denied*** a petition for mandamus "because such writs are reserved for only the most extraordinary cases, or where the error of the district court is clear and indisputable."  *Id.*  In addressing the question under a separate 28 U.S.C. § 1291 appeal (which is not the case here), the Court held that the identity of the client was not privileged in the first place and vacated the district court's order applying the crime-fraud exception.  *Id.* at 204.  In *In re Omnicom* the Court declined to "for now" because the record at that "preliminary stage" did not support application of the crime-fraud exception.  233 F.R.D. at 410.  That stands in stark contrast to this situation where Judge Mazzant's review of Carbonite's documents was based on a "comprehensive record," including summary judgment and a trial.  *Id.* at 406.

Second, Carbonite cites *United States v. Weiss* to assert that proving witness tampering and bribery require Oasis to demonstrate that the alleged co-inventors testified untruthfully.   Pet. at 19.   As an initial matter, this Court should not entertain that argument because it was not made below.   Additionally, Carbonite does not cite any Fifth Circuit authority to support its position and nothing within 18 U.S.C. §1512(b)(1) or 18 U.S.C. §201(c)(2) requires false testimony.[12]   Indeed, courts have found no requirement to prove false testimony.   *See, e.g., Shuttlesworth v. Hous. Opportunities Made Equal*, 873 F. Supp. 1069, 1078 (S.D. Ohio 1994) ("Under 18 U.S.C. § 201(c)(2), defendants apparently could commit an offense even if they offered rental assistance only to secure truthful testimony against plaintiff."); *United States v. Blaszak*, 349 F.3d 881, 886-87 (6th Cir. 2003) (holding that Section 201(c)(3), like Section 201(b)(4), does not require that the defendant agree to give false testimony).[13]   Regardless, Campos, Atwood, and

---

[12] Carbonite mischaracterizes *United States v. Weiss*, 630 F.3d 1263 (10th Cir. 2010).   Although the Tenth Circuit has held that acting "voluntarily and intentionally to bring about false or misleading testimony or to prevent testimony" is required to prove the "corruptly persuades" element of § 1512 (*see Weiss*, 630 F.3d at 1273), § 1512 specifically criminalizes "attempts" to do so, and actual false testimony is not required.   *See, e.g.*, *United States v. Harrison*, No. 13-cv-3320, 2015 WL 2126919, at *4 (E.D. Pa. May 7, 2015) ("[S]uccess is not a prerequisite to conviction under the Witness Tampering Statute, an attempt is enough.")   Moreover, violations of §1512(b) (1) may be found even without "corrupt persuasion", as it is just one of several alternatives listed in the statute, including "us[ing] intimidations, threats" and "engag[ing] in misleading conduct towards another person."  18 U.S.C. § 1512(b).

[13] In implicitly asserting that it cannot be liable under §1512(b)(1) because the testimony of the alleged co-inventors was true, Carbonite seeks to improperly raise a statutory affirmative defense under § 1512(e) for the first time on mandamus, which was never pled or identified in its discovery responses in the district court

Todd's co-inventorship claims are not true and significant evidence undermines those claims. Oasis Br. at 14.

Third, Carbonite asserts that the assignment agreement somehow immunizes it from claims of bribery. But those assertions fail for the same reasons as EMC's. *See* Oasis Br. at 27-28. Carbonite asserts that it executed the August 30, 2012 agreement "specifically with *Ethicon*[14] in mind." Pet. at 20. It is not surprising that Carbonite sought to mask its payments to the alleged co-inventors as a payment for something other than testimony. But that does not immunize Carbonite as a matter of law from Oasis' well-supported assertions.

Fourth, Carbonite incorrectly asserts that the "evidence is uncontroverted" that it believed the alleged co-inventors' involvement in the case was over  In fact, Carbonite was well-aware that Oasis' RICO claims were pending before the Court at the time the inducements were made. In addition, during discovery on the RICO case,

*Carbonite subpoenaed* them for depositions during which Carbonite sought testimony in defense of Oasis' RICO claims. Although Carbonite makes the argument that it did not intend

testimony in

---

below. Even under § 1512(e), which is not part of the case, ***Carbonite*** "has the burden of proof  by a preponderance of the evidence, that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully." 18 U.S.C. §1512(e).

[14] *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998)

support of its claims. That, in combination with the other activities engaged in by Carbonite further supports the *prima facie* case of a crime or fraud.

Finally, Carbonite makes a newly-minted argument that the documents are entitled to additional protection because some of the documents involve communications with respect to the joint defense group. First, as explained above, Carbonite presumably notified its former co-defendants of Oasis' document requests and the district court's order to produce the documents pursuant to its obligations under the Joint Defense Agreement. Yet, none of those former co-defendants filed any objections or expressed any interest in the documents ordered by the district court. Second, Carbonite supports its argument with a Second Circuit case rather than the controlling Fifth Circuit precedent on which the district court correctly relied. Third, Carbonite's argument fails to recognize that Oasis' claims—which the district court found to have sufficient evidentiary support—are that Carbonite and its co-defendants acted in concert, as a RICO enterprise, to commit numerous acts of bribery and witness tampering. *See, e.g.,* A100 at n.2 (explaining that the district court found sufficient evidence to establish a *prima facie* case that Defendants committed the various RICO violations under the guise of a Joint Defense Group). Although Carbonite seeks to distance itself from the actions of the enterprise, the record shows that Carbonite was a full participant. A764 at 832:25-833:4; *see* Oasis Br. at 6-9.

## 2. This Court Should Decline To Entertain Carbonite's *Noerr-Pennington* Summary Judgment Argument On Mandamus

Rather than challenge the district court's discovery order, Carbonite advances a summary judgment argument that it did not make in opposition to Oasis' motion to compel. *Compare* A2381-419 with A1801-23. Indeed, the district court correctly noted that as Carbonite had ***not even pled*** its *Noerr-Pennington* defense at the time of Oasis' motion to compel, let alone argued that the doctrine applied to the district court's discovery order. A100 at n.1. Moreover, the district court has since ***denied*** Carbonite's motion to amend its pleadings as untimely, which was unsurprising given that Carbonite waited for nearly three years before seeking to add its *Noerr-Pennington* defense to its pleading. A6593-94. Carbonite is also wrong on the law because the Fifth Circuit has never applied *Noerr-Pennington* to a RICO case and that *Noerr-Pennington* would not immunize Carbonite's conduct in any event. *E.g.*, *Pumpkin Air, Inc. v. City of Addison*, 608 F. Supp. 787, 792 (N.D. Tex. 1985) (citing *Feminist Women's Health Center v. Mohammad*, 586 F.2d 530, 542 (5th Cir. 1978)); *United States v. Wagner*, No. 3:94-cv-2540, 1996 WL 148356, at *1 (N.D. Tex. Jan. 29, 1996) (citing *Coastal Sales Marketing, Inc. v. Hunt*, 694 F.2d 1358, 1364-65 (5th Cir. 1983). A6781-86.[15]

---

[15] Without any legal support, Carbonite asserts that the *Noerr-Pennington* doctrine may be used to immunize Carbonite from criminal liability under RICO. (Pet. at 24 n. 14) But the Fifth Circuit has never applied *Noerr-Pennington* to a RICO case, and the doctrine does not immunize criminal liability. *See United States v. Goldberg*, 906 F. Supp. 58, 64 (D. Mass. 1995) ("The [*Noerr-Pennington*] doctrine does not, however, immunize activities said to violate the criminal laws of the

### III.   Carbonite Has Not Demonstrated That This Court Should Issue A Writ Of Mandamus Vacating the District Court's Sanctions Order

This Court should grant the extraordinary remedy of a writ of mandamus to vacate the district court's sanctions order.  Carbonite has not demonstrated either (i) that it has no other means of relief; or (ii) that its right to issuance of the writ is clear and indisputable.

First, Carbonite has not demonstrated that it has no other means of relief, nor can it.  The district court sanctioned Carbonite by indicating that it would provide an additional jury instruction at trial.  To the extent Carbonite disagrees with the district court's jury instruction, it can challenge that instruction on direct appeal, as is normally done for civil jury instructions.  Indeed, Carbonite does not identify any legal support demonstrating that mandamus is appropriate to remedy improper civil jury instructions.  To the extent this Court disagrees with the instruction it can remand the case for a new trial in which that instruction would not be given.  Carbonite will not suffer any harm by that process and, in any event, "mandamus relief is not available simply to relieve [litigants] of the burden of having to go through trial."  *In re Taiwan Union Tech. Corp.*, 587 F. App'x 638, 641 (Fed. Cir.

United States") (citing *Welch v. United States*, 750 F.2d 1101 (1st Cir.1985); *United States v. Marcano–Garcia*, 622 F.2d 12 (1st Cir.1980); *Whelan v. Abell*, 48 F.3d 1247 (D.C. Cir.1995).)  As the Supreme Court has stated, "one could imagine situations where the most effective means of influencing government officials is bribery, and we have never suggested that that kind of attempt to influence the government merits protection." *Allied Tube & Conduit Co. v. Indian Head, Inc.*, 486 U.S. 492, 504 (1988); *see also Feld Entm't Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 307 (D.D.C. 2012) ("*Noerr–Pennington* does not apply, first and foremost, to bribes, in any context.") (internal quotation marks and citations omitted).

2014) (nonprecedential). Moreover allowing litigants to challenge jury instructions on mandamus would open the floodgates and encourage litigants seeking to avoid an adverse jury verdict to rush to the Courts of Appeals with challenges to jury instructions. The Court should firmly discourage petitions for writs of mandamus for civil jury instructions.

Second, Carbonite's right to mandamus regarding the district court's sanctions order is not clear and undisputable. As an initial matter, "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763-64 (1980) (quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1977)). A district court is "free to fashion any sanction appropriate to punish recalcitrant parties and to deter those similarly situated." *Batson v. Neal Spelce Assoc., Inc.*, 765 F.2d 511, 516 (5th Cir. 1985).

The district court's sanctions order came after Carbonite engaged in repeated efforts to delay resolution of its refusal to produce documents to Oasis until the eve of trial. The district court was well-aware of the gamesmanship undertaken by Defendants and noted that Defendants' violation of the discovery order was part of their litigation strategy. A102 at n.5. Before issuing its discovery sanction, the district court warned defendants that they had been in violation of the district court's discovery order for a week. A3132. Acting well within its discretion, the district court issued its sanctions order a few days later. A105-06.

Even if Carbonite were correct that the district court's sanctions order were incorrect that is insufficient to justify the extraordinary remedy of mandamus because Carbonite "can obtain adequate and meaningful relief of the sanctions order on appeal after final judgment." *In re AIM Sports, Inc.*, 447 F. App'x 213, 215 (Fed. Cir. 2011). In fact, the district court's sanction order could have been significantly more severe. For example, the district court could have deemed facts established, which is not only explicitly permitted by the Federal Rules of Civil Procedure, but consistent with sanctions imposed in other similar cases. *See, e.g.*, *Card Tech. Corp. v. DataCard Inc.*, 249 F.R.D. 567 (D. Minn. 2008) (Due to the discovery violations of plaintiff, the following facts would be taken as established: (1) the $3.5 million plaintiff agreed to pay as a "commission" was to be used for bribes to be paid to Nigerian government officials, (2) plaintiff knew the purpose of this payment was to facilitate bribes, and (3) plaintiff knew that defendant was in negotiations for the project contract involved and agreed to pay the "commission" so that it, rather than defendant, would receive the contract). Accordingly, the district court's sanction not only was just, but moderate under the circumstances and well within its discretion. Accordingly, this Court should deny Carbonite's request for a writ of mandamus vacating the district court's sanctions order.

## CONCLUSION

For the foregoing reasons this Court should deny Carbonite's Petition for Writ of Mandamus.

Dated:  September 23, 2015          Respectfully submitted,


                                   /s/ *Jonas R. McDavit*
                                   Alan S. Kellman, Esq.
                                   akellman@desmaraisllp.com
                                   Tamir Packin, Esq.,
                                   tpackin@desmaraisllp.com
                                   Jonas R. McDavit
                                   jmcdavit@desmaraisllp.com
                                   DESMARAIS LLP
                                   230 Park Avenue
                                   New York, New York 10169
                                   (212) 351-3400 Telephone
                                   (212) 351-3401 Facsimile

# CERTIFICATE OF SERVICE

I hereby certify that two copies of this Answering Brief for Respondent were sent via Federal Express Next Business Day delivery to:

| | |
|---|---|
| Thomas M. Melsheimer<br>Thomas B. Walsh, IV<br>FISH & RICHARDSON P.C.<br>1717 Main St., Suite 5000<br>Dallas, Texas 75201<br>Telephone: (214) 292-4001<br>Facsimile: (214) 747-2091<br>Email: melsheimer@fr.com<br>Email: walsh@fr.com<br><br>Attorneys for Petitioners<br>EMC Corporation and Decho<br>Corporation | Josh A. Krevitt<br>Paul E. Torchia<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, NY 10166-0193<br>Tel: 1.212.351.4000<br>Fax: 1.212.351.4035<br>Email:Oasis-EMC-GDC@gibsondunn.com<br><br>Attorneys for Petitioners<br>EMC Corporation and Decho<br>Corporation |
| Chris R. Ottenweller<br>Bas de Blank<br>ORRICK, HERRINGTON &<br>SUTCLIFFE, LLP<br>1000 Marsh Road<br>Menlo Park, CA 94025<br>Telephone: 650-614-7400<br>Facsimile: 650-614-7401<br>Email: EMC_OASIS-OHSOnly@orrick.com<br><br>Attorneys for Petitioners<br>EMC Corporation and Decho<br>Corporation | Eric H. Findlay<br>FINDLAY CRAFT, LLP<br>6760 Old Jacksonville Hwy, Suite 101<br>Tyler, TX 75703<br>Telephone: (903) 534-1100<br>Facsimile: (903) 534-1137<br>Email: efindlay@findlaycraft.com<br><br>Attorneys for Petitioners<br>EMC Corporation and Decho<br>Corporation |

| | |
|---|---|
| Matthew Lowrie<br>Kevin M. Littman<br>Beth I. Z. Boland<br>Joseph H. Jolly<br>Foley & Lardner LLP<br>111 Huntington Ave<br>Boston, MA 02199<br>Telephone:  617-342-4000<br>Fax:  617-342-4001<br>Email: BOST-File-Carbonite-OasisResearch@foley.com;<br>BOST-F-Carbonite-RICO@Foley.com<br><br>Attorneys for Defendant Carbonite, Inc. | Andy Tindel<br>Andy Tindel, Attorney & Counselor at Law, P.C.<br>112 East Line Street, Suite 304<br>Tyler, TX  75702<br>Telephone:  903-596-0900<br>Fax:  903-596-0909<br>Email:  atindel@andytindel.com<br><br>Attorneys for Defendant Carbonite, Inc. |

I also certify that the original and three copies were also sent via Federal Express Next Business Day delivery to:

> Clerk of Court
> United States Court of Appeals for the Federal Circuit
> 717 Madison Place, NW
> Washington, DC 20439
> (202) 275-9678
>
> On this 22nd day of September, 2015.
>
>
> _/s/ Jonas R. McDavit_
> Jonas R. McDavit